[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-11703

Non-Argument Calendar

————————————————

FREDY HERNANDEZ-DIAZ,

                                                          Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                          Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-014-390

————————————————

Before LUCK, BRASHER, and MARCUS, Circuit Judges.

PER CURIAM:

Fredy Hernandez-Diaz petitions us for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal. He says that the BIA: (1) erred in concluding that he failed to prove exceptional and extremely unusual hardship to his children were he deported; and (2) did not give reasoned consideration to his arguments. However, we lack jurisdiction to review the BIA's hardship finding, and the BIA expressly adopted the decision of the IJ, who properly considered Hernandez-Diaz's application. Accordingly, we dismiss the petition in part and deny it in part.

**I.**

Hernandez-Diaz is a Mexican citizen who entered the United States without inspection in April 2002, when he was seventeen years old. He has lived in this country ever since. In June 2012, the Department of Homeland Security charged him as removable for being a noncitizen present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Hernandez-Diaz conceded removability and applied for cancellation of removal, claiming that his three United States-citizen daughters would face exceptional and extremely unusual hardship if he were removed. *See id*. § 1229b(b)(1).

In his application for cancellation of removal, Hernandez-Diaz attached his children's birth certificates; his driver's license,

social security card, driving history, tax returns, bank statements, children's medical and school records; a letter from his employer; affidavits from friends; and country reports for Mexico. Most relevantly, he included an educational plan for his oldest daughter, Diana, who had a developmental delay. The report noted that Diana received speech and language therapy, and that, although she was making progress, she still "struggle[d] with written expression, understanding new vocabulary, and Reading Comprehension which impact[ed] her success within the general curriculum."

Hernandez-Diaz appeared for hearings in 2012, 2013, 2017, and 2019, offering his testimony at the last one. There, he explained that he lived with his partner, whom he had been with since 2006, and his three daughters, and his partner was pregnant with their fourth child. His parents and two of his sisters lived in Mexico, while his four other siblings lived in the United States without status. Hernandez-Diaz regularly sent money to his parents, in part because his father could no longer work after an accident.

Hernandez-Diaz testified that if he were removed, his partner and their children would go with him because his partner did not work. But he thought life would be hard for them. Hernandez-Diaz didn't think that he could find work in Mexico. His parents lived in a small home without running water, the nearest village was one hour by car, and the nearest hospital was three hours away. At best, he would only make enough money for basic needs, like food. He said that while he would receive free medical care, his daughters would not because they were not Mexican citizens.

4                          Opinion of the Court                        22-11703

As for his daughters' life in the United States, Hernandez-Diaz said that his partner walked them to and from school and prepared their meals. He paid for insurance, but they also received assistance through the Special Supplemental Nutrition Program for Women, Infants, and Children, and free lunches at school. Focusing on Diana's developmental delay, Hernandez-Diaz testified that she had never failed or repeated a class, but she received speech therapy and help with homework. She could not communicate well with others and was treated for depression at school, although she was not clinically diagnosed. Hernandez-Diaz did not submit country conditions reports showing what treatments would be available for Diana in Mexico, and -- because he had not returned since 2002 -- he did not know himself. He added that no one in the United States with status could take care of his children for him.

The IJ issued an oral decision denying Hernandez-Diaz's application. After concluding that Hernandez-Diaz had satisfied some of the statutory requirements for cancellation of removal, the IJ found that he fell short of establishing exceptional and extremely unusual hardship for his daughters if he were deported. The IJ acknowledged Diana's learning disability, but noted that she had not failed any classes, was receiving therapy, and had performed adequately at the correct grade level thus far. Further, he found no evidence from Hernandez-Diaz's partner directly that she would join him in Mexico, determining that "it should be presumed that she will continue caring for her children in the event that he is removed to Mexico and she remains in the United States." For these reasons, Hernandez-Diaz did not meet the "very high standard

imposed by [the] exceptional and extremely unusual hardship" requirement.[1]

Hernandez-Diaz appealed the IJ's decision to the BIA, arguing that the IJ did not properly consider his daughter's educational plan, failed to apply certain BIA precedent, and gave only a cursory treatment of the facts. The BIA "adopt[ed] and affirm[ed] the decision of the Immigration Judge with respect to his determination that the respondent did not demonstrate the requisite level of hardship to a qualifying relative for purposes of cancellation of removal." The BIA acknowledged his arguments on appeal but concluded that they were "not supported by the record" and "decline[d] to disturb the Immigration Judge's decision."

This timely petition for review followed.

## II.

On a petition for review of a BIA final decision, we inspect the BIA's decision, as well as the IJ's decision to the extent the BIA expressly adopted it. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). But Congress has barred judicial review over "any judgment regarding the granting of relief" for cancellation of removal under § 1229b. 8 U.S.C. § 1252(a)(2)(B)(i). "This provision deprives us of jurisdiction to review facts found as part of discretionary-relief proceedings." *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th

---

[1] The IJ also held that, even if Hernandez-Diaz were eligible for relief, it would be denied as a matter of discretion due to prior incorrect tax filings he had submitted and two drinking-related driving arrests.

1208, 1217 (11th Cir. 2023) (quotations omitted).   Nevertheless, "we retain jurisdiction to consider constitutional claims and questions of law."  *Id.*; *see also* 8 U.S.C. § 1252(a)(2)(D).  We review *de novo* questions of law, including questions about our own subject matter jurisdiction and whether the BIA provided reasoned consideration to an application.  *Ponce Flores*, 64 F.4th at 1217; *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018).

## A.

The first issue before us is whether the BIA erred in affirming the IJ's finding that Hernandez-Diaz's daughters would not suffer exceptional and extremely unusual hardship under § 1229b(b)(1)(D) if he were removed.  But this question is not for us to decide.  Section 1252(a)(2)(B)(i)'s "jurisdictional bar includes the exceptional and extremely unusual hardship factual finding under § 1229b(b)(1)(D)."  *Ponce Flores*, 64 F.4th at 1217 (quotations omitted); *see also Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1279 (11th Cir. 2020) (en banc) ("[A]ll eligibility determinations for the five enumerated categories of discretionary relief are barred from review."), *aff'd sub nom. Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022).  Thus, we do not have jurisdiction over Hernandez-Diaz's challenge to the IJ's and BIA's hardship determination.

Hernandez-Diaz argues that we can review the hardship determination because it is a mixed question of law and fact, but we disagree.  It's true that "the application of a legal standard to undisputed or established facts" qualifies as a "question[] of law" under § 1252(a)(2)(D).  *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067

(2020). However, we've never held in binding precedent that § 1229b(b)(1)(D)'s hardship determination falls into this category. Instead, we've repeatedly held that the "exceptional and extremely unusual hardship" determination is a "factual finding" that we lack jurisdiction to review. *See Ponce Flores*, 64 F.4th at 1217; *Flores-Alonso v. U.S. Att'y Gen.*, 36 F.4th 1095, 1099–1100 (11th Cir. 2022); *see also Patel*, 971 F.3d at 1279. Under our prior panel precedent rule, we are bound by these past holdings. *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015).

To the extent Hernandez-Diaz suggests that those cases never had the opportunity to address whether the hardship determination is a mixed question of law and fact, this argument misses the mark. For one thing, "a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel." *Id.* (quotations omitted). Moreover, even if a theoretical hardship determination were a mixed question, Hernandez-Diaz's specific challenge is not. His argument, in essence, is that the IJ improperly weighed the evidence about his children's livelihood, the likelihood of his partner's return to Mexico, and his employment prospects in Mexico. "The problem with this argument is that it is inherently factual." *Flores-Alonso*, 36 F.4th at 1100. It is a challenge to the IJ's weighing of evidence and findings of fact, as expressly adopted by the BIA. But "[a]s sympathetic as we are to [Hernandez-Diaz's] plight, we are precluded from reweighing the hardship factors now since our review of his case is jurisdictionally limited to 'constitutional claims or questions of law.'" *Id.* (quoting 8 U.S.C. § 1252(a)(2)(D)).

## B.

The next issue before us is whether the BIA gave reasoned consideration to Hernandez-Diaz's appeal of the IJ's rejection of his application. In its decision, the BIA said that it "adopt[ed] and affirm[ed] the decision of the Immigration Judge with respect to his determination that the respondent did not demonstrate the requisite level of hardship to a qualifying relative for purposes of cancellation of removal." Where, as here, an order of the BIA adopts certain findings of the Immigration Judge, we review *both* the determination of the BIA and the determination of the IJ. *Bing Quan Lin*, 881 F.3d at 872; *see also Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016) ("When the BIA explicitly agrees with the findings of the immigration judge, we review the decision of both the BIA and immigration judge as to those issues.").

Our "reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence." *Jeune*, 810 F.3d at 803. Rather, we ask if the agency "consider[ed] the issues raised and announc[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (quotations omitted). But the agency need not address every single claim or piece of evidence. *Jeune*, 810 F.3d at 803. "Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.*

This is not a case where the IJ misstated any facts, gave un-reasonable explanations, failed to explain itself, or ignored arguments in the record. Instead, the IJ cited the correct BIA precedent in making the hardship determination and found facts based on Hernandez-Diaz's application and testimony. The IJ rightly explained that he "must consider all the factors in the aggregate" and identified the "[i]mportant factors," like "ages, health and circumstances" of Hernandez-Diaz's daughters. He concluded that, despite Diana's learning disability, she still performed well in school and the record did not reflect a risk of that changing, even if Hernandez-Diaz were removed. The BIA adopted the IJ's view of the facts, citing additional relevant precedent about the high standard for exceptional and extremely unusual hardship.

This analysis was not "so fundamentally incomplete that a review of legal and factual determinations would be quixotic." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1301 (11th Cir. 2015). Rather, it shows a thorough and thought-out analysis under the pertinent hardship law. And it is not our job to review the facts and decide whether we would come to a different conclusion. Instead, "[o]ur inquiry concerns process, not substance." *Id.* Nothing in the IJ's order indicates a defective process.

Hernandez-Diaz does not address the IJ's opinion on appeal. Instead, he says that the BIA opinion alone was insufficient because it was "'entirely silent' as to [his] arguments regarding the immigration judge's mischaracterizations, failure to consider, cursory treatment as to the majority of the petitioner's evidence and

testimony."   But "the [BIA] need not write a lengthy opinion that merely repeats the immigration judge's reasons for denying the requested relief," and "instead may state that it affirms the immigration judge's decision for the reasons set forth in the decision." *Prado-Gonzalez v. INS*, 75 F.3d 631, 632 (11th Cir. 1996) (per curiam). Here, the BIA did just that, and Hernandez-Diaz provided no compelling reason to question the IJ's decision itself.

Finally, to the extent Hernandez-Diaz attempts to use the reasoned-consideration analysis as a backdoor challenge to the IJ's findings of fact, we lack jurisdiction over this claim. *See Flores-Alonso*, 36 F.4th at 1100 ("As long as the BIA cites and proceeds to apply the proper legal standard, as it did in this case, we cannot make legal error out of an inherently subjective determination of whether an applicant's relatives will experience exceptional and extremely unusual hardship."). Hernandez-Diaz's challenges to the IJ's finding that his partner would remain in the United States, his supposed failure to address the unavailability of adequate of speech therapy in Mexico, and any other "inherently factual" questions exceed our scope of review. *See id.*

All told, we lack jurisdiction over Hernandez-Diaz's challenge -- whether direct or indirect -- to the agency's exceptional and extremely unusual hardship factual finding. As for his remaining challenge to the agencies' reasoned determination of his application, it is without merit.

**DISMISSED IN PART AND DENIED IN PART.**